UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE V.,

Plaintiff,

                                        Case No. 1:20-cv-01099-TPK

     v.

COMMISSIONER OF SOCIAL                 OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 16, 2020, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 12), and the Commissioner has filed a similar motion (Doc. 13). For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

On June 1, 2016, Plaintiff (who had been receiving benefits up until October 20, 2014 based on a prior application ) protectively filed her application for benefits, alleging that she became disabled on June 1, 2006. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on April 16, 2019. Both Plaintiff and a vocational expert, Edmond J. Calandra, testified at that hearing.

The Administrative Law Judge issued an unfavorable decision on May 10, 2019. In that decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since her application date. He then found that Plaintiff suffered from severe impairments including major depressive disorder and generalized anxiety disorder. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels except that she could only occasionally interact with coworkers, supervisors, and the general public. After concluding that she had no past relevant work, the ALJ determined that Plaintiff could perform jobs like

hand packer, janitor, and kitchen helper.  The ALJ also determined that these jobs existed in significant numbers in the national economy.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, raises two issues.  She asserts, first, that the ALJ cherry-picked the medical evidence in a way that led him to formulate a residual functional capacity finding based on his own lay interpretation of the evidence.  Second, she argues that the ALJ's findings did not adequately address the impact that Plaintiff's difficulty in handling work stress would have on her ability to engage in substantial gainful employment.

## II.  THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.  It will then discuss the pertinent medical records.

### A.  Hearing Testimony

Plaintiff, who was 39 years old on the date of the administrative hearing, testified, first, that she lived with her six children (one of whom had a brain tumor) and that she had obtained a GED.  She had not worked in the past three years and did not think she could, based on her inability to be around people and the stress she experienced when being away from home.  She was able to attend events outside the home as long as her children were with her.  Plaintiff also said that she experienced panic attacks, sometimes at night, and especially when she was between medications.  She could have several such attacks over the course of a week and they left her exhausted.

When asked about socializing, Plaintiff testified that her mother visited her but did not help with child care because she had responsibilities of her own.  She had accompanied Plaintiff on a trip to Florida to attend a conference on pediatric cancer.  Testifying about daily activities, Plaintiff said that she got her children off to school and would generally go back to bed, getting up in time to prepare dinner.  She did play games on her phone.  Currently, she was experiencing flu-like symptoms, which she attributed to her medication, and slept almost half the day.

The vocational expert, Mr. Calandra, was first asked about a hypothetical person with Plaintiff's vocational profile who could work at any exertional level but who could interact with others on only an occasional basis.  In response, he said that such a person could do jobs like hand packer, janitor, and kitchen helper, and he provided numbers for those jobs as they exist in the national economy.  Someone who could not interact at all with others or tolerate work stress could not be employed, however.  The same would be true for someone who, due to panic attacks, would be off task between 30 minutes and eight hours in a workday.

### B.  The Medical Records

In 2016, a note made in connection with Plaintiff's medication management indicates that she reported worsening symptoms since her son's cancer diagnosis, including being unable to get out of bed and an absence of motivation and energy. She was taking medication for depression, anxiety, and panic attacks. Those symptoms continued throughout the year. She also attended counseling sessions and reported some improvement in her symptoms over time. When she met a new psychiatrist in July, 2016, she said that her depression was severe and that she often felt emotionless. She also described poor attention and concentration.

Plaintiff was seen by a physician's assistant in 2017 and underwent a depression screening. Based on her self-report, she appeared to be severely depressed. However, by October of that year she said her symptoms were "greatly improved with the medication and counseling." (Tr. 555). In January, 2018, the same screening showed only moderate depression, but Plaintiff reported "horrible" anxiety in April, 2018. (Tr. 533). In August, 2018, she told her counselor that with increases in her medication her mood stability was increasing. There are a large number of counseling notes which indicate, generally, that, over time, Plaintiff was making only slow progress toward her goals and that she was continuing to report symptoms related to depression and anxiety.

## C. The Opinion Evidence

Plaintiff was evaluated on July 29, 2016 by Dr. Fabiano, a consultative psychologist. She reported a history of treatment for mental illness with a hospitalization in 2007. Currently, she was experiencing an increase in appetite and difficulty sleeping as well as depression and frequent panic attacks. At the evaluation, her mood was euthymic and her attention and concentration were intact. Her memory, however, was mildly impaired. She reported little socialization or outside activities. Dr. Fabiano thought that Plaintiff could follow simple directions and perform simple tasks while maintaining adequate attention and concentration. However, she was moderately limited in her ability to relate to others and to deal with stress. (Tr. 449-53).

Shortly thereafter, Dr. Dipeolu, a state agency psychologist, reviewed the records up to that date (August 11, 2016), and concluded that Plaintiff suffered from severe affective and anxiety disorders. However, he concluded that the "[p]reponderance of the evidence suggests [Plaintiff's] current psychiatric impairment result (sic) in moderate limitations in work-related activities. She is capable of performing work with brief, superficial contact with others." (Tr. 97).

The final assessment comes from Dr. Morra, a treating psychologist and psychiatrist, who completed a form on October 29, 2018, assessing Plaintiff's mental ability to work. He listed Plaintiff's diagnoses as major depressive disorder, generalized anxiety disorder, agoraphobia, and panic disorder. He said that she had made only minimal progress since beginning treatment in 2006 and reported that she often described depressive symptoms, isolation, lack of motivation,

and significant feelings of hopelessness as well as uncontrollable anxiety and frequent panic attacks. She had a long list of symptoms including loss of interest in almost all activities, difficulty thinking and concentrating, and persistent disturbances of mood and affect. He rated her ability to relate to others as poor and gave the same description of her ability to deal with work stress. Finally, he concluded that working would exacerbate her symptoms and would prevent her from engaging in full-time employment, leading to frequent panic attacks and the need to miss more than four days of work per month. (Tr. 1567-72).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

 "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  Cherry-Picking the Evidence

Plaintiff begins her argument on this issue by noting that the ALJ purported to rely on the opinions of Drs. Morra, Fabiano, and Dipeolu in crafting a residual functional capacity finding. According to his decision, he gave each of these opinions only modest evidentiary weight, for the

-4-

reasons given in that decision, and then selectively parsed the opinions to find support for his residual functional capacity finding.  In doing so, Plaintiff contends, he ignored other portions of both those opinions and the remainder of the record which showed that Plaintiff had additional limitations.  The Commissioner counters that there were many normal findings recorded during Plaintiff's visits with her primary care physicians and mental health providers and that the ALJ properly factored this information, together with evidence about Plaintiff's ability to manage her day-to-day affairs, into his residual functional capacity finding.

The Court begins its discussion of this issue with a detailed review of the ALJ's decision as it relates to the three expert opinions of record.  First, evaluating Plaintiff's report of symptoms, the ALJ found her statements to be inconsistent with evidence that she was consistently making progress with the management of her depression and anxiety.  (Tr. 17).  He noted that she did not require crisis care and that she was able to take care of her children and to be on time for medical appointments.  During those appointments, she was calm and sometimes euthymic and she was rarely described as anxious, although she often reported a lack of effectiveness from her medications.  The ALJ found that there was no objective evidence of panic attacks, although his decision also described multiple trips to the emergency room for complaints of chest pain (which at least one provider believed to be related to anxiety).  After summarizing the findings made by the three expert sources, the ALJ gave them "only modest evidentiary weight...." (Tr. 22).  He reasoned that the opinions of Drs. Dipeolu and Fabiano were remote and did not consider "extensive" additional evidence concerning Plaintiff's mental condition.  He accepted the former's conclusion that Plaintiff was limited in her ability to relate to others but not his statement that Plaintiff would have issues with responding to change or with traveling.  He also adopted Dr. Fabiano's conclusion that Plaintiff's symptoms would not interfere with her day-to-day functioning, but he criticized the opinion for not providing "discrete or precise work-related function-by-function limitations."  *Id*.  Finally, he concluded that Dr. Morra's opinion was inconsistent with the nature of the treatment he provided and, at least in part, with the objective medical evidence.  In support of that conclusion, the ALJ said that:

> There is no indication that the claimant was considered for a higher level of crisis treatment by Dr. Morra concomitant with the severity of panic he describes in his opinion statement.  He did not recommend inpatient or intensive outpatient psychiatric care that one would expect with that intensity of symptomatology.  Conversely, he noted that the claimant's medication titration strategy should be simply to change on thing at a time only and go slowly....  Moreover, his mental status examinations documented that the claimant presented as calm with no abnormal motor activity.... The record does not contain objective evidence to support the intensity, frequency, or persistence of panic attacks described by Dr. Morra.  On the contrary, the claimant repeatedly denied having panic attacks during examinations by her primary care medical providers.

(Tr. 22-23).

The Court agrees with the Commissioner that the ALJ had sound reasons for ascribing only partial weight to the two 2016 opinions given the volume of medical evidence submitted after they were rendered, although there are some differences between the type of travel and change that Plaintiff experienced and the type which would be typical in a workplace (which is what the ALJ rejected from Dr. Dipeolu's opinion).  It is also interesting that the ALJ, after criticizing Dr. Fabiano for not being more specific, chose to accept the more general statement that Plaintiff's problems did not interfere with her ability to function on a daily basis, but not the more specific conclusion that she had a moderate limitation in her ability to deal with stress in addition to being limited in her ability to interact with others.  The more significant problem, however, is the ALJ's dismissal of the bulk of the limitations contained in Dr. Morra's report.

Dr. Morra was a treating source with access to the complete record who saw Plaintiff in person on multiple occasions.  Under 20 C.F.R. §416.927, those are factors - along with the length of the treating relationship, the frequency with which the source has examined the claimant, and the specialization of the source - which an ALJ must seriously consider.  Of course, the touchstone of that evaluation is the extent to which the source's opinion is consistent with and supported by the record.  *See* 20 C.F.R.§416.927(c)(3) & (4).  Here, although the ALJ did discuss the supportability and consistency factors, his analysis was flawed.

First, the ALJ clearly discounted Dr. Morra's opinion based on the type of treatment Dr. Morra provided.  However, this Court has said that an

> ALJ may not discount a treating physician's opinion "merely because [she] has recommended a conservative treatment regimen." *Burgess [v. Astrue*, 537 F.3d [117 (2d Cir. 2008] at 129 (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (the district court erred in ruling that the treating physician's conservative treatment recommendations constituted substantial evidence that the claimant was not disabled) ). This is because neither the ALJ nor the Court may "impose their respective notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Id*. (citing *Shaw*, 221 F.3d at 134-35) (alterations omitted).

*Jackson v. Berryhill,* 2018 WL 3306193,  *6 (W.D.N.Y. July 5, 2018).  There is nothing in this record indicating that any different type of treatment would have been more appropriate for Plaintiff's conditions than the regimen followed by Dr. Morra, and it was erroneous for the ALJ to use the treatment method prescribed by not only Dr. Morra but the prior treating psychiatrist as a reason for finding Dr. Morra's opinion to have overstated the severity of Plaintiff's mental limitations.

The ALJ also bolstered his reasoning by noting that Plaintiff did not actually have panic attacks during her sessions with Dr. Morra.  However, there is nothing in the record to suggest that a claimant who is suffering from a severe anxiety disorder (which the ALJ found to exist) must have panic attacks in the presence of a psychiatrist whom she sees periodically for

-6-

medication management in order to validate her complaints. She received consistent treatment, including medication, for anxiety and panic attacks, indicating that all of the treating mental health sources considered her condition to be real and her complaints to have some validity. The fact that she was free of panic attacks for the short period of time she saw Dr. Morra does not provide reasonable support for the ALJ's conclusion that such attacks were rare or non-existent.

The ALJ also appears to have placed strong reliance on notes from Plaintiff's general practice physician to the effect that she did not suffer from panic attacks. Apart from the fact that the purpose of most of those visits was unrelated to her anxiety disorder, the comments to which the ALJ and the Commissioner refer are marginal notes which appear to have been reprinted verbatim at multiple visits in 2018. The Court notes that some of these same office notes state, in the more specific portions which were recorded on the dates of Plaintiff's visits, that she was having chest pains and visiting the emergency department for reasons apparently related to anxiety and that her anxiety was "horrible." Additionally, Plaintiff consistently reported the recurrence of panic attacks to her mental health providers, and it is unclear why the ALJ would choose to rely on the boilerplate marginal notes made by a physician's assistant in a general practice setting over the long history of panic attacks documented by both Dr. Morra and Plaintiff's counselor. That is a fairly textbook example of "cherry-picking" the evidence to support a particular outcome, a practice that this and other courts have routinely condemned. As one court noted,

> [a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot " 'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

*Dana F. o/b/o O.E.H. v. Berryhill*, 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019).

Overall, the ALJ's decision to afford only moderate weight to Dr. Morra's opinion lacks substantial support in the record. Consequently, a remand for further consideration of that evidence under the proper legal standards is required.

### B.  Accounting for Stress

The second issue raised by Plaintiff is based on the proposition that an ALJ must make specific findings about a claimant's ability to handle work stress. She notes that all of the expert opinions concluded that she had limitations in that area, but, she points out, the residual functional capacity finding includes no restrictions which would account for these limitations other than the restriction that Plaintiff could not interact more than occasionally with coworkers,

supervisors, or the public.  She additionally faults the ALJ for concluding that she had no restrictions in this area based on her ability to attend medical appointments and to engage in certain activities of daily living.

Although the Commissioner argues that the ALJ appropriately accounted for Plaintiff's difficulties with stress (which, as Plaintiff correctly notes, he never specifically mentioned in his decision) by limiting her contact with others, it is not at all clear that her stress intolerance is directly related to having to interact with the public or, in a work setting, with coworkers.  Dr. Fabiano, for example, appears to have treated these as separate limitations, and Dr. Morra appears to have done the same.  On remand, the ALJ should revisit the issue of whether Plaintiff has stress-related limitations that are not fully accounted for by limiting her contact with others, and, if so, making a more specific finding as to her work-related functionality in this area.

### V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 12), **DENIES** the Commissioner's motion (Doc. 13), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**